IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

KERI EDWARDS,                            )
                                         )
      Plaintiff,                   )
                                         )
vs.                                      )        Case No. 13-cv-295-TLW
                                         )
CAROLYN W. COLVIN,[1]                    )
Acting Commissioner of Social Security,  )
                                         )
      Defendant.                   )

## OPINION AND ORDER

Plaintiff Keri Edwards seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 7). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 44-year old female, applied for benefits under Title II on October 31, 2007. (R. 81-83). Plaintiff alleged a disability onset date of February 28, 2007. Id. Plaintiff claimed that she was unable to work due to a back injury, arthritis, sleep apnea, a herniated disc, a ruptured disc, a slipped disc, degenerative disc disease, osteoporosis in both knees (post arthroscopic surgery on the left knee), edema in her left leg, and sleep deprivation with memory loss due to the sleep apnea. (R. 96). Plaintiff's claims for benefits were denied initially on December 31, 2007, and on reconsideration on May 15, 2008. (R. 46-50; 51-53). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 55-56). The ALJ held the first hearing on May 27, 2009. (R. 21-41). The ALJ issued a decision on September 25, 2009, denying benefits. (R. 8-20). The Appeals Council denied review, and plaintiff appealed. (R. 1-5). United States Magistrate Judge Paul Cleary remanded the case to the ALJ to offer plaintiff an additional hearing, "conform the hypothetical propounded to the vocational expert at the hearing to the written analysis[,] and provide a more detailed analysis of the claimant's credibility in the decision." (R. 411). The ALJ held a second hearing on December 3, 2012. (R. 427-449). On February 22, 2013, the ALJ issued a partially favorable decision, finding plaintiff disabled as of December 11, 2011, but not before. (R. 407-426). The Appeals Council did not assume jurisdiction, so the ALJ's February 22, 2013 decision is the final decision of the Commissioner.

Plaintiff timely filed an appeal, claiming that she was also disabled prior to December 11, 2011. (Dkt. ## 2, 18).

**The ALJ's Final Decision[2]**

The ALJ found that plaintiff had not performed any substantial gainful activity since her alleged disability onset date of February 28, 2007. (R. 413). Her last insured date was determined to be December 31, 2012. Id. The ALJ found that plaintiff had the severe impairments of "degenerative disk [sic] disease of the lumbar spine; osteoarthritis of the knee bilaterally, with surgical intervention on the left knee; de Quervain's arthritis, status post surgery of the right hand; sleep apnea, and obesity." (R. 413-14). The ALJ found that neither plaintiff's headaches nor her history of cholecystectomy were supported by the record as severe impairments. (R. 414). The ALJ also found that plaintiff's claims of disabling rheumatoid arthritis were also unsupported, although he conceded that osteoarthritis "may produce similar effect in terms of joint pain and discomfort." Id. After analyzing the "paragraph B" criteria, plaintiff's claims of depression and anxiety were deemed non-severe impairments, with no limitation in activities of daily living; social functioning; and concentration, persistence, and pace; and no episodes of decompensation. Id. Plaintiff's impairments did not meet or medically equal a listed impairment. (R. 414-15).

After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that prior to December 11, 2011, plaintiff could perform

> sedentary work as defined in 20 CFR 404.1567(a) in that she was able to lift or carry up to 10 pounds occasionally and up to ten pounds frequently. She was able to sit at least six hours in an 8-hour workday and she can stand and/or walk at

---

[2] The ALJ's decision notes that "claimant was not disabled prior to July 29, 2012, but became disabled on that date and has continued to be disabled through the date of this decision." (R. 412). However, later in the decision, the ALJ found plaintiff disabled as of December 11, 2011. (R. 416). Plaintiff and defendant both accept the December 11, 2011 disability date; therefore, the Court will proceed with December 11, 2011 as the ALJ's "established disability" date.

3

least 2 hours in an eight-hour workday, all with normal breaks. She was further limited by conditions in her hands and is able to frequently, but not constantly, engage in repetitive tasks such as keyboarding.

(R. 416). The ALJ then found that plaintiff's residual functional capacity did not allow her to return to her past relevant work as a habilitation training specialist, and citing testimony from the vocational expert at the hearing, determined that while this occupation was not categorized in the DOT, both a closely matched job and plaintiff's description of the work she performed exceeded the RFC prior to December 11, 2011. (R. 423). Finally, the ALJ determined that prior to December 11, 2011, jobs existed in significant numbers which plaintiff could perform, such as food order clerk, charge account clerk, inspector/checker, and clerical mailer. (R. 424-25). Accordingly, the ALJ found that prior to December 11, 2011, plaintiff was not disabled. Id.

## ANALYSIS

Plaintiff raises three issues (dkt. # 18):

(1) The ALJ failed to consider properly Dr. Koenig's medical opinion;

(2) The ALJ failed to consider properly plaintiff's credibility; and

(3) The ALJ's finding that plaintiff was not disabled prior to December 11, 2011 is not supported by substantial evidence.

Of these issues, plaintiff's first argument requires remand.[3]

**Dr. Koenig**

Plaintiff argues that the ALJ failed to follow the "well settled" sequential analysis in his evaluation of Dr. Koenig's opinion. (Dkt. # 18 at 5). She notes that the ALJ "may reject the opinion only on the basis of contradictory medical evidence and not due to his or her own

---

[3] Although plaintiff requests a remand for benefits, the record does not support a clear finding of disability dating back to February 28, 2007. Plaintiff left her job as of that date because she could not get her doctor to sign off on a "lifting class" that was required by her employer, not because she felt she was unable to perform the job.

4

credibility judgments, speculation, or lay opinion." Id. at 5-6, referencing Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004).

The proper procedure for evaluating the opinion of a treating physician is well established. "Under the regulations, the agency rulings, and our case law, an ALJ must give good reason in the notice of determination or decision for the weight assigned to a treating physician's opinion." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527 (d)(2) and Social Security Ruling 96-2p, 1996 WL 374188 at 5). "The type of opinion typically accorded controlling weight concerns the 'nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.'" Lopez v. Barnhart, 183 Fed. Appx. 825, 827 (10th Cir. 2006) (unpublished). Generally, an ALJ should give more weight to opinions from treating physicians. Watkins, 350 F.3d at 1300 (citing 20 C.F.R. § 404.1527(d)(2)). However, it is error to give the opinion controlling weight simply because it is provided by a treating source. Id.

In determining whether an opinion should be given controlling weight, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight" by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Id. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Second, if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the

5

other substantial evidence in the record, then the opinion is entitled to deference and must be evaluated in reference to the factors enumerated in 404.1527 and 416.927. Those factors are:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight she ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

Third, if the ALJ rejects the opinion completely, she must give specific, legitimate reasons for doing so. Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (holding that an ALJ, in weighing a treating physician's opinion, need not analyze every factor, but must render a decision that is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.")

On May 6, 2009, Dr. Koenig opined that plaintiff could infrequently sit, stand, or walk (less than two hours); frequently lift and/or carry less than ten pounds; infrequently use her arms for reaching, pushing, and pulling; and infrequently use her hands for grasping, handling, fingering, or feeling. Dr. Koenig also opined that plaintiff needed to rest due to pain. He noted that his opinions were supported by the medical findings of "hand pain; tendonitis and arthritis, post surgery; cannot grasp; knee arthritis, bilateral; low back pain; thoracic back pain with disk [sic] herniated disk [sic], l[eft] sciatica, worse standing." (R. 390).

The ALJ found that plaintiff's RFC on December 11, 2011, mirrored the previous RFC findings, except with the following limitations: "She suffers from symptomatology of pain and discomfort such that she would require periods of rest that would preclude her from performing work activities five days a week, eight hours a day or the reasonable equivalent thereof on a regular and consistent basis." (R. 422). The ALJ then discussed plaintiff's visit to Dr. Koenig "in December of 2011," noting that she "continued to present crying after the death of her father," and "[a]t this visit, Dr. Koenig recorded her appearance as 'chronically ill-appearing.'" Id. This observation, coupled with a warning by Dr. Koenig that plaintiff needed to reduce the amount of pain medication she was taking or he would refer her to pain management, appear to be the only things that swayed the ALJ to a finding of disability as of December 11, 2011. (R. 422).

However, Dr. Koenig's treatment notes begin in January 2009 and show several diagnoses for arthritis, hand pain, joint pain, and back pain among other varied illnesses prior to the December 11 date. (R. 372-88, 390, 539-51, 552-620). Moreover, Dr. Koenig reported plaintiff to be "chronically ill-appearing" on more than one occasion prior to December 11, 2011 (although plaintiff's complaints of irregular menses, diabetes, and "grief reaction" were first reported at the December 11, 2011 appointment). (R. 583). See also Exhibits 23F and 24F. In fact, Dr. Koenig's remarks that plaintiff was "chronically ill-appearing" are found as far back as January 2010 (R. 549), but these notations are not discussed by the ALJ. Because this continual observation (i.e., "chronically ill-appearing") is the main point that appears to have swayed the ALJ, it is difficult, without explanation, to understand why the ALJ chose the December 11 date.

In addition, the ALJ did not offer any reasoning as to why he apparently rejected Dr. Koenig's sit/stand limitations, which were also included prior to December 11, 2011. Additionally, the ALJ did not specifically address Dr. Koenig's records regarding plaintiff's back pain. Rather, the ALJ generally minimized the complaints without explaining why. (R. 420). For

7

example, the ALJ acknowledged a statement about "ongoing low back pain" in Dr. Koenig's treatment notes; however, the ALJ discredited Dr. Koenig's medical source statement by saying:

> throughout his treatment, this generalist did not refer the claimant to an orthopedist, endocrinologist, a pain specialist, a psychiatrist, or any other specialist, for stepped up care. This is an indication that Dr. Koenig believed himself to be fully qualified to take care of the claimant's condition on a daily and ongoing basis. It also indicates his own mental conclusion that the claimant's condition was manageable by a primary care practitioner. In the context of Dr. Koenig's treatment of the claimant, it is difficult to find support for his conclusions about her condition as made in April of 2009.

(R. 420-21). Assuming the ALJ is correct and Dr. Koenig concluded that plaintiff's "condition was manageable by a primary care practitioner," he has failed to explain why this same reasoning was not applied on December 11, 2011 and thereafter.

## CONCLUSION

For the reasons set forth above, the ALJ's decision finding plaintiff not disabled prior to December 11, 2011 is **REVERSED AND REMANDED** for the ALJ to clearly explain his reasoning for discrediting Dr. Koenig's opinion prior to December 11, 2011.[4]

SO ORDERED this 22nd day of May, 2014.

_____
T. Lane Wilson
United States Magistrate Judge

---

[4] Of note, the ALJ identifies two disability dates, December 11, 2011 and July 29, 2012, with no explanation. (R. 425). As previously noted, both parties agree that December 11, 2011 is the correct date. (See n.2).